## BURGETT *vs.* BISSELL.

Where a person, contracting to purchase land, cuts timber, contrary to the
terms of the contract, he will not thereby lose his equitable ownership of
the timber severed, where he subsequently entitles himself to a conveyance
under the contract; unless the timber has been sold by the vendor, after
its severance, to a bona fide purchaser.  If it has been so conveyed, he is
entitled to an account of it, from the vendor, and to be allowed, or paid, its
value.

But the equitable right of such purchaser, or of any person claiming under
him, cannot be enforced, against the legal right of the vendor to take and
dispose of the timber.

Having wrongfully cut the timber, neither the purchaser, nor any one claim-
ing under him, has any title to equitable relief in regard to it, without fully
performing his contract.

And if, previous to such performance, the vendor, in the exercise of his legal
right, expends labor and money in getting out the timber and sending it to
market, he has a lien upon the timber to the extent of such expenditure,
and he cannot be compelled in equity, upon the vendee's performing his
contract, to surrender the timber, without repayment of his advances, and
compensation for his labor.

Where a person claiming under the purchaser, takes such timber from the pos-
session of the vendor, and is sued by the latter in a legal action, for its value,
he may set up, in his defense, his equitable right, under the purchaser.
And if the purchaser has performed his contract, or tendered a performance,
so as to be entitled to a conveyance, the defense of the defendant, against a
recovery beyond the amount of the plaintiff's lien, will be complete.

THIS was an appeal by the defendant from a judgment entered
upon the report of a referee, in favor of the plaintiff, for $3309,90,
besides costs.  The action was brought to recover damages for
the wrongful taking of 400 sticks of pine timber.  The defend-

Burgett v. Bissell.

ant, in his answer, claimed to be the owner of the timber under a purchase thereof at a sale upon executions issued against Moses P. Little. The referee found the following facts : That Reuben Robie and Moses H. Lyon, being the owners of two tracts of land situate in the county of Steuben, agreed, on the 9th of March, 1847, to sell the same to Little, for the sum of $2035, payable, $500 on the 1st of November thereafter and the residue in three equal annual installments, with interest ; that there was a clause in the contract forbidding the cutting of timber ; that there was an agreement underwritten that the vendee might cut to make payments, and might continue to cut as long as he kept up the payments ; that the vendee made some payments, but was in arrear of payments to a large amount, and being so in arrear, cut timber and commenced drawing it to the river ; that while he was still cutting and drawing, the sheriff, by virtue of sundry executions against Little, levied upon the timber as his ; that after the levy and before the sale, Robie & Lyon claimed the timber and sold it to the plaintiff ; that after such sale, they gave notice to the assignees of Little, (who had made an assignment of his property,) that unless they paid up the money due on the contract, in thirty days, they would declare the contract forfeit ; that the assignees did, within the thirty days, tender the amount due, which tender had been kept good ; that, after such tender, the sheriff sold on the execution against Little, and one Lowery bid in the timber, paid the amount of the bid to the extent of the executions, and the balance of the bid to the assignees of Little, who accepted it, and relinquished in favor of Lowery all claim to the timber ; that Lowery sold to the defendant the whole timber, who took it to market and sold it ; that after the defendant took the timber, Robie paid back to the plaintiff the amount of money that the plaintiff had paid him on the purchase ; that the plaintiff had before this, and immediately after the purchase, drawn the timber, about one half of it, to the landing from which the defendant had taken it ; that the payment of the money back, by Robie, was to said plaintiff, and not on a rescinding of the contract. The referee's conclusions of law from the foregoing facts, were, that Little having cut the timber

when he had no right to cut, the timber so severed became the property of the vendors of the land, and they had a perfect right to take and dispose of the same; and having done so, the purchaser under them acquired a perfect title to the timber, of which he could not be divested by any subsequent act of Robie & Lyon, and therefore that he was entitled to recover the value of the timber.

*J. Herron,* for the appellant.

*R. Campbell,* for the respondent.

*By the Court,* T. R. STRONG, J.   The contract between Lyon & Robie on one side and Little on the other, for the sale by the former to the latter of the land upon which the timber in question was then standing, provides, in the body of the contract, in reference to the cutting of timber, that "it shall not be lawful for the party of the second part, or any assignee or other person claiming under him, to commit waste or damage on the said land by cutting, carrying off, injuring or destroying any trees or timber growing, lying or being on the land, over and above what may be necessary or proper for fuel and for building fences, or other improvements to be made and erected on the said land by the party of the second part." And by a memorandum or further agreement at the foot of the contract, which must be regarded as part of it, it is provided that "said Little is to have the privilege of cutting timber on said land for the purpose of making the above payments. And if he makes the payments as they become due, he shall have the right to continue to cut." The timber in controversy was not cut for fuel or fences or other improvements, and it was cut after the third installment of the purchase money had become due, and while the whole of that, and part of the second installment remained unpaid. It is clear, therefore, that the cutting of the timber was not only not authorized by the express permission, but was in violation of the express prohibition in the contract. It is also clear, that at law Lyon & Robie might take the timber when severed from the soil and

dispose of it. They remained the legal owners of the land, notwithstanding the contract of sale, and were the legal owners of the timber after its severance, having at law all the incidents of such ownership. (*Mooers* v. *Wait,* 3 *Wend.* 104. *Suffern* v. *Townsend,* 9 *John.* 35. *Cooper* v. *Stower, Id.* 331. *Pierrepont* v. *Barnard,* 5 *Barb.* 364.) In equity, however, the rights of the parties to the contract were different. According to the equitable rule applicable to the case, Lyon & Robie, after the execution of the contract, were trustees of the land for Little, and he was a trustee of them for the purchase money. They were seised of the land for his use, with a lien upon it for the money to be paid, and he was the owner of the land. (*Story's Eq. Jur.* 789, 790, 1212. *Kidd* v. *Dennison,* 6 *Barb.* 17. *Watson* v. *Le Row, Id.* 481. *Swartwout* v. *Burr,* 1 *Id.* 499.) This principle did not warrant the cutting of the timber in opposition to the terms of the contract, but I do not perceive any good reason for holding that Little lost his equitable ownership of the timber by cutting it and thereby converting it into personal property. It would be manifest injustice to allow a vendor in a contract for the sale of real estate to retain and have the benefit of timber, buildings, stone or other thing of value which was part of the land, taken from it after the contract, by the vendee, although wrongfully, if the vendee subsequently entitles himself to a conveyance under the contract. In my opinion the vendee in such a case retains his equitable right to the property severed, in like manner as to the land, unless it has been conveyed by the vendor after its severance, to a bona fide purchaser; and if it has been so conveyed, he is entitled to an account of it from the vendor and to be allowed or paid its value at the time it was taken by the latter. But the equitable right of Little or any person claiming under him in the present case could not be enforced against the legal title of Lyon & Robie to take and dispose of the timber until they could be required to give a deed under the contract. Having wrongfully cut the timber, Little could not, nor could any one under him, have any title to equitable relief, in regard to it, without fully performing his contract. Until such performance, Lyon & Robie might, in the exercise

of their legal right, themselves get out the timber and prepare and send it to market, or they might sell it and thereby transfer the same right to the purchaser. They sold it to the plaintiff before the contract was performed on the part of Little, but I think the proof sufficiently shows that the plaintiff at the time had knowledge of Little's claim; he therefore acquired no greater right than Lyon & Robie had, which was the legal title subject to the equitable right of Little. He stood in their place, with precisely their rights, and nothing further. The plaintiff, upon his purchase, removed a portion of the timber to a landing upon the river, with a view of sending the timber to market, and in that way expended labor and money to a considerable amount. To the extent of that expenditure, the plaintiff had, in my judgment, a lien upon the timber, and he could not be compelled in equity to surrender the property without repayment of his advances, and compensation for his labor. The expenditures were rightfully made at the time; it could not be foreseen with certainty, that the contract for the land would be performed on the part of Little, and a state of things exist which would call for a deed under it from Lyon & Robie; and it would be gross injustice to take the timber from him without full reimbursement and payment. If Lyon & Robie had retained the timber and incurred expenses in relation to it in a similar way, and Little or any person claiming under him—assuming that a right to a conveyance of the land exists—were before the court for a specific performance of the contract of sale by a conveyance of the land and timber, I entertain no doubt that a repayment of those expenses would be required as a condition of granting the relief sought in respect to the timber. The defendant is substantially in the position that the plaintiff in such a case would occupy. He took the timber from the plaintiff, claiming under Little, and is now called upon in a legal action for its value. He sets up in his defense his equitable right under Little, which I think he might properly do. And if Little or any person under him has performed his contract with Lyon & Robie, or done what is equivalent to it, and is entitled to a conveyance, and the defend-

Burgett v. Bissell.

ant has Little's rights to the timber, his defense, against a recovery beyond the amount of the plaintiff's lien, is complete.

I am satisfied that the contract between Lyon & Robie and Little remained in force, in equity, at the time of the tender by Little's assignees. Although the payments had not been made as they became due, Lyon & Robie had not availed themselves of the default to put an end to the contract, but on the contrary they treated it as subsisting. Subsequent to that tender, Rathbone, who had purchased the interest of Little in the contract as to the land, tendered to Lyon & Robie the amount of the last payment. The two tenders embraced the whole sum unpaid on the contract, and Rathbone was then entitled to a deed. He was then in a situation to enforce a specific performance, so far as he was interested; and the defendant, if he had acquired the rights of Little, was in a situation to enforce, and avail himself of, his equitable right to the timber. The tender by Rathbone was made the first day of November, 1850. The complaint in this action appears by the certificate of the sheriff in the printed case furnished the court, to have been served on the fourth of that month. Nothing remained to be done, therefore when the action was commenced, to perfect the defendant's equity, assuming that he stood in Little's place.

The sale of the timber under the execution of Lowry did not probably, of itself, pass any title; but connected with the acts of Little's assignees, who then had his title, it amounted to a conveyance by them. The rights of the purchaser at that sale were transferred to the defendant.

It is contended on the part of the defendant, that the exacting and receiving payment from him by the plaintiff, for the use of the plaintiff's land, for the storage of, or as banking ground for, the timber, precluded the plaintiff from thereafter setting up a right to the timber, or at least for bringing this action for a wrongful taking; but I have arrived at a different conclusion. The circumstances disclosed do not show that the plaintiff intended thereby to relinquish any right to the property, or give any permission to take it, but the contrary rather appears.

The position of the plaintiff's counsel, that the plaintiff's title

---

to the timber could not be defeated by the acts of the parties to the contract, subsequent to the sale to him, is answered by the view already taken, that by his purchase he acquired only the legal title, subject to the equity before mentioned. It was undoubtedly competent for those parties, even as against him, to keep the contract in force, and for the owners under Little to perform Little's obligation, and thereby become entitled to the property, to the extent of their equities.

It follows from what has been stated, that the plaintiff was entitled to a report in his favor for something; but what amount cannot be ascertained from the evidence. The referee allowed him the full value of the timber, which was wrong. The judgment upon the report must therefore be reversed, and a new trial granted; the costs to abide the event.

[Monroe General Term, March 7, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]