John J. Dillon, J.
This is an article 78 CPLR proceeding in which petitioner seeks an order setting aside the revocation of a building permit or, in the alternative, directing the respond *433 ent to issue a new permit based upon the original plans and specifications heretofore filed. The petitioner is engaged in the business of marketing petroleum products through retail gasoline service stations. In connection with its business it became interested in an unimproved parcel of real property located on Central Avenue in the Town of Greenburgh. The property is somewhat irregular in shape with a frontage of 175 feet on Central Avenue and a depth of approximately 140 feet. On June 25, 1965, the petitioner entered into a conditional contract for the purchase of the property. The property was located in a zone identified as a “ Designed Shopping District,” and, under the town zoning ordinance, gasoline service stations were permitted in such a district if a special permit could be obtained from the Zoning Board of Appeals. The contract of sale was conditioned upon the seller obtaining such a special permit. Under date of July D>, 1965, the Secretary of the Zoning Board of Appeals advised the seller’s attorney-that the special permit had been granted, subject to four conditions, all of which were acceptable to the petitioner. In reliance upon the letter the petitioner ordered and obtained a topographical survey, engineering data, plans and specifications, and filed applications with various departments of the State of New York for the purpose of obtaining a building permit to erect the gasoline service station. The respondent concedes that during all this time it was fully aware of petitioner’s contemplated purchase of the property if the necessary preliminary requirements could be met. The building permit was delivered to the seller on October 29, 1965, and in reliance upon it the petitioner closed title to the property on November 1, 1965, by paying $84,000 to the seller, representing the balance due on the purchase price of $86,500. On the same day the petitioner entered into a contract for the clearing and leveling of the premises and the construction of the station, involving an expenditure of $66,615.
Thereafter, and on November 9, 1965, the Building Inspector of the Town of Greenburgh wrote a letter to the previous owner of the property, in whose name the building permit had been issued. That letter in part stated that the building permit ‘1 is hereby revoked due to the fact that an amendment to the provisions of the zoning ordinance of the Town of Greenburgh adopted October 26, 1965, prohibits gasoline service station use in Designed Shopping District which is the current zoning category of said property.” It appears that the petitioner has in all respects complied with the provisions of the special permit heretofore issued as well as the zoning ordinance as it existed prior to the enactment of the amendment.
*434 It is perfectly clear from the nature of the business in which petitioner is engaged, from the price paid for the property, and from the preliminary negotiations and activities with respect to the property, that the petitioner’s sole motive in purchasing the property was to develop it as a gasoline service station. This, of course, must have been obvious to all the town officials with whom the petitioner had dealings. But no one ever communicated to the petitioner the fact that there was a proposal to amend the local zoning ordinance or that the zoning ordinance was amended on October 26,1965, so as to eliminate the property from a zone in which a gasoline service station was a permissible use. It is significant that although the building permit was dated October 22, 1965, it was not delivered by the town officials to the petitioner until October 29, 1965, by which time the town had already adopted the amendment prohibiting the use for which the permit had been issued. It is quite plain that if the petitioner had been advised that the permit was in imminent danger of revocation by reason of the amendment to the zoning ordinance it would not have closed title. The court takes judicial notice of the fact that the property has a much greater value if it can be developed for use as a gasoline service station than it would have if such use were not permitted.
Section 264 of the Town Law provides that an amendment to the zoning ordinance shall take effect 10 days after the required publication and posting but that it shall take effect “ from the date of its service as against a person served personally with a copy thereof If the petitioner had been served with a copy of the ordinance or if it had been given actual notice of the enactment of the ordinance, prior to closing of title, petitioner could not claim that it was misled by failure of the town officials to advise it of the change in the zoning ordinance. However, such is not the case.
The court determines that by reason of the work undertaken by the petitioner and the obligations which it incurred as the result of the $66,615 construction contract entered into on November 1, 1965, in reliance upon the special permit and the building permit which was still valid on that date, it acquired a vested right to erect and operate a gasoline service station on the property (see People ex rel. Ortenberg v. Bales, 224 App. Div. 87, affd. 250 N. Y. 598; New York State Investing Co. v. Brady, 214 App. Div. 592; City of Little Falls v. Fisk, 24 N. Y. S. 2d 460, 472; Willerup v. Village of Hempstead, 120 Misc. 485; Village of Sands Point v. Sands Point Country Day School, 2 Misc 2d 885, affd. 2 A D 2d 769).
*435 There is much discussion in the reported cases as to the precise point at which the privilege acquired under a permit ripens into a vested right. It is doubtful that any reliable rule can be formulated. Justice can best be served by balancing the equities in each case. In a very .similar situation, the highest court in the State of New Jersey directed that a building permit be reinstated where the owner, as in the present case, had paid a substantial sum of money to acquire a parcel of real property in reliance upon the representation that such property could be developed for use as a gasoline service station (Tremarco Corp. v. Garzio, 32 N. J. 448). In that case, as here, the actions of the municipality’s employees had lulled the properly owner into believing that his property could be developed for the intended purpose. In reversing the Appellate Division and reinstating the decision of the lower court, the Supreme Court of New Jersey said the following (p. 457): “ There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and quantum of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality ”.
The court has also considered the argument made by petitioner that the amendment in question is invalid because of failure to comply with the express requirements of sections 13 C, D and F of the zoning ordinance itself. There appears to be merit in this contention, but in view of the fact that it has been determined that petitioner acquired a vested right to develop its property in accordance with the building permit, the court does not deem it necessary to pass upon the validity of the amendment.
Accordingly, the relief sought by the petitioner is granted and the respondent is directed to reinstate the building permit heretofore issued.